**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SIMONE GATLIN, on behalf of MGJ minor child | ) |
| | ) Case No.: 1:23-cv-07661 |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| RIDGELAND SCHOOL DISTRICT 122, a school | ) |
| District; BOARD OF EDUCATION FOR RIDGELAND | ) |
| SCHOOL DISTRICT 122, a government body; TRACY | ) |
| FLOOD, in her official and individual capacity. | ) |
| | ) |
| Defendants. | ) JURY DEMAND |

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs Simone Gatlin, on behalf of MGJ minor child, and MGJ by and through counsel

Danielle A. Pinkston of Pinkston Law Group, P.C., respectfully allege in their Complaint and

Jury Demand as follows:

### INTRODUCTION

Of all the suffering in the world, the most tragic is that imposed on children. It is even

more tragic when such suffering robs them of the opportunity to reach their full potential,

haunting them for life. This case concerns violations of the rights of a minority child  to  enjoy

equal  access  to  educational  opportunities  and  all  the consequences of that deprivation to

her future. Plaintiff, MGJ was one of the few Black students at Simmons Middle School. Some

Minority students were regularly called the N-word, subjected to various racial jokes, exposed

to ridicule, and other forms of racist bullying, intimidating, harassment, and abuse by their

Caucasian peers.

Despite explicit knowledge of the widespread hostile environment faced by Minority

students, Defendants Prinicpal Tracy Flood, Ridgeland School District 122, ("RSD" or the

1

"School District") and the Board of Education for Ridgeland School District 122 ("Board of Education" or "BOE) acted with a callous indifference of that knowledge and made virtually no effort to mitigate the racist hostilities, leaving these children to fend for themselves only to be faced with harsh consequences as a result. Indeed, in a glaring act of callousness, the School District and Board of Education have yet to take formal action in their entity capacities, and many individual Board Members have yet to condemn these well-documented injustices. The indifference of School District leaders explains how such levels of hate and racism were permitted to fester.

Plaintiffs Mrs. Gatlin and MGJ turn to the courts, after internal recourse in the School District that has utterly failed them, to vindicate their rights. Defendants should be held accountable so that no other child in the School District should ever have to suffer the same way.

**PARTIES**

1. Simone Gatlin is the mother of MGJ a minor child, a citizen of the United States, and is a resident of the State of Illinois.

2. MGJ is a minor child, former student of Simmons Middle Schools, a citizen of the United States, and is a resident of the State of Illinois.

3. Defendant Tracy Flood is a citizen of the United States, and a resident of the State of Illinois. She served as the Principal of Simmons Middle School on behalf of Defendant Ridgeland School District 122 and was an agent, apparent or otherwise, and/or employee of Defendant, Ridgeland School District 122 and Board of Education. Defendant was the Principal who engaged in, among other things, providing all aspects of public school administration services at Simmons Middle School and had a duty to supervise and protect the safety of students at all times. This includes a duty to report any allegations

of harassment and abuse of a student to appropriate authorities for investigation, pursuant to the Abused and Neglected Child Reporting Act, 325 Ill. Comp. Stat. 5/1 et seq. As a school principal of students, Defendant also had the ability and authority to take corrective action on behalf of DISTRICT 122 to stop racial bullying, intimidation, discrimination, harassment, abuse, and to discipline perpetrators of such conduct.

4.  Ridgeland School District 122 is a public school district that serves Cook County, Illinois, (hereinafter "RSD"), acting through its agents, servants, and/or employees, is engaged in, among other things, the management and administration of the public schools and related services within the borders of BOE. The BOE maintains an office within the County of Cook and State of Illinois.

5.  The Board of Education for Ridgeland School District 122 is a public governmental body operating in Cook County, Illinois with its principal place of business at 6500 W 95th Street, Oak Lawn, Illinois.

## JURISDICTION AND VENUE

6.  This action arises under the Constitution and laws of the United States and the State of Illinois. The claims raised under the United States Constitution are brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.SC. §2000(d) et. seq., a 42 U.S.C. §§ 1983 and 1986, and 42 U.S.C. § 1985.

7.  This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and redressing violations of civil rights pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over Illinois state law claims pursuant to 28 U.S.C. §1367. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988

8.  Venue is proper in this Court under 28 U.S.C. §1391 (b) because all incidents, events,

and occurrences giving rise to this action occurred in the Northern District of Illinois.

Moreover, all of the parties reside in this Judicial District.

## FACTUAL ALLEGATIONS

9.  MGJ is now a ninth-grade African American minor girl child, who has been a student in
    the District the past ten years.

10. At Simmons, MGJ had been an honor roll student and proud member of the band.

11. The turmoil caused by George Floyd's murder started spilling into the school and non-
    Black students would mockingly say, "I can't breathe."

12. Students started routinely using the "N" word in and outside the school building.

13. A non-Black student named Student D was the worst offender and he would say Black
    people were underground creatures and monkeys.

14. ZS reported Student D and these incidents in general to the school administration,
    including Mr. Summers and Mr. Simpson.

15. ZS recalled Mr. Summers taking notes of ZS report on a piece of paper and her response
    was, "I'll look into it," but no one ever followed up with ZS or Ms. Smoot as to whether
    an investigation was actually done or the findings of an investigation and the notes that
    Mr. Summers took were not shared with the family.

16. In May 2022, ZS's cousin, THJ, a fellow seventh grader, was being bullied for her race.

17. ZS overheard Student D and his friends call THJ an "under-formed" animal.

18. THJ asked, "What does that mean?" The boys responded it meant monkey and started
    making monkey sounds.

19. ZS told Student D and his friends to knock it off and reported the incident that day to Mr.
    Summers.

20. Later that day, ZS and his two older cousins met up at the park close to the Middle School and Student D and his friends were there.

21. ZS's cousins had been hearing how THJ and ZS were being treated and wanted to speak with Student D to "quash" it.

22. At the time, ZS had a cast on his finger and arm from a basketball injury and when he was looking back to talk to his cousins, Student D threw him down onto the ground and sucker punched him.

23. The school learned of ZS's attack because students recorded it on their phones.

24. ZS and Student D were called into the office to discuss it with Mr. Summers.

25. Student D acknowledged that ZS had been sticking up for THJ.

26. ZS reiterated that Student D was racially harassing THJ and said that he would have defended himself had he not had a cast and he received a 2 day in school suspension because the administration considered this a threat.

27. However, the school never followed up with THJ or ZS's family about whether the underlying complaint of racial harassment was investigated.

28. During the 2021-2022 school year, according to THJ and ZS, a white student named AB also bullied THJ for being Black.

29. ZS reported these incidents to Simmons administration but the response, or lack thereof, was the same.

30. On August 8, 2022, MGJ sent an email to Defendant Flood, ten (10) days prior to the start of school, asking to switch class teams due to her social anxiety and because it was difficult for her to make friends and talk to people.

31. MGJ stated she just really wanted to the 2022-2023 school year to go well for her,

5

considering her first year was online.

32. This was the only time she would get to experience 8th grade, and last year did not go so well for her.

33. MGJ stated she wanted her 8th to be memorable, in a positive way.

34. Defendant Flood denied this request via email.

35. At the start of the 2022-2023 school year, students' racist behavior increased.

36. Ms. Hogan, ZS Smoot's mother, reported to the administration that her son was being called a gorilla.

37. Again, the response was, "We'll look into it."

38. In August of 2022, during fourth period science class, a student named Student O was telling ZS about a recent police brutality case involving a Black man.

39. Student O said, "That's not okay. Black lives matter."

40. AB overheard him and said, "Black lives don't matter."

41. Students around AB said, "Did you really say that?"

42. ZS asked her to stop, but AB only became emboldened by her peers' reactions.

43. She continued making a slew of racist statements including, "Black people belong in dog pounds"; "Black people blew up my church"; and using the "N" word repeatedly.

44. At this point, students were lining up to leave the science class.

45. ZS thinks Mr. Boril, the science teacher, "didn't want to hear."

46. ZS says later that day in gym class, AB used the "N" word again in front of him and he again asked her to stop.

47. At the end of class, ZS went to change out of his uniform and by the time he got out, heard a commotion in the hallways.

6

48. Students approached them separately to share what AB had said in science, since MGJ and THJ were two of the few Black students in their grade, besides ZS.

49. On August 18, 2022, the first day of school at Simmons Middle School through August 31, 2022, racial bullying, intimidation, discrimination, harassment, and abuse occurred on multiple occasions by AB against MGJ and other Minority students.

50. MGJ was made aware by another student, THJ that AB had bullied, harassed, and intimidated her and other Minority students in the prior school year (2021-2022) and nothing was done about it, even though the school was made aware.

51. MGJ had previously heard AB use the "N" word in the hallway and MGJ went up to AB in gym class and asked her if she was really saying the racist things that people were reporting to MGJ.

52. MGJ says that AB turned beat red, which confirmed for her that AB had said these things.

53. Having witnessed the administration do nothing about Student D, AB, or other students displaying racist behavior in the past, MGJ felt there was no hope that administration would intervene or stop AB.

54. On August 31, 2022, a fight occurred after school around 2:45 pm after gym class; having personally experienced AB's racism, THJ participated as well.

55. MGJ got on the bus, went home, and told her mother about the altercation immediately.

56. Around 5:00 pm Mrs. Gatlin received a call from Derek Simpson requesting that she bring MGJ to the school the morning of September 1, 2022 for a discussion.

57. He advised that MGJ would be going home with Mrs. Gatlin after the scheduled meeting, implying they had already planned to suspend her.

58. Administration acted swiftly and MGJ and THJ were put up for expulsion.

7

59. On September 1, 2022, Ms. Gatlin had a meeting with Defendant Flood, Derek Simpson, Mrs. Gatlin, her husband, and MGJ.

60. MGJ shared her account of what happened.

61. MGJ and THJ had an altercation with AB because they heard about the racist statements she made during science class and no one was stopping this behavior in the school.

62. She explained how she was being bullied, racially harassed, called the "n" word, intimidated, and just wanted AB to stop saying racist things to her, her friends, and other Minority students.

63. During the meeting Defendant Flood stated there was nothing they could do about what happened to MGJ

64. On September 1, 2022, a Notice of Ten (10) Day Suspension given to MGJ.

65. Defendant stated that she and Derek Simpson would be looking into the claims that MGJ shared during the meeting.

66. In this September 1, 2022 letter, Defendant Flood was dishonest when she wrote, "District personnel have determined that other appropriate and available behavioral and disciplinary interventions have been exhausted and this suspension appropriate under the circumstances." Nothing had been exhausted.

67. Derek Simpson and Defendant Flood stated that an additional investigation would be conducted.

68. Mrs. Gatlin provided Defendant Flood documentation in the form of screenshots of posts showing racial derogatory slurs from AB via social media against a Hispanic student.

69. Defendant Flood stated that the school is not responsible for what students do via social media or in their homes.

70. On September 7, 2022, there was a second meeting and Defendant Flood, Derek Simpson, Superintendent Joseph Matise, Mrs. Gatlin, her husband, MGJ's father, and MGJ were all in attendance.

71. MGJ was asked additional questions regarding the incident and a video of the altercation was viewed by those present in the room.

72. Mrs. Gatlin provided school administrators with a written statement from another student ZS about what he has witnessed from AB in the past, using racial slurs and how this impacted him as a Minority student.

73. The administration informed Ms. Gatlin that they were still investigating the racial allegations but that they would be going forward with MGJ's expulsion.

74. The Superintendent stated they made the decision to push for an expulsion of MGJ and the expulsion letter had already been drafted prior to the start of the meeting.

75. Defendants' decision to expel MGJ was made before the investigation concluded and while MGJ was still serving her 10 Day suspension.

76. Defendants' decision to expel MGJ was clearly unreasonable under the circumstances considering MGJ had no previous history of disciplinary issues, no other infractions, and had an excellent student record since starting preschool in the District, years prior.

77. Defendants' administered the most severe punishment because Officer Banas of the Oak Lawn Police Department pressured them to do so, even though his daughter AB created a racially hostile environment for minority students.

78. Eventually, Ms. Gatlin felt she had no choice and signed an Expulsion in Abeyance Agreement where the expulsion was stopped and MGJ was to receive remote instruction for 5 hours a week, provided through the District, and to participate in graduation

9

activities in exchange for the parent not contesting MGJ not being able to attend school full-time.

79. Defendants' failed to adequately investigate reported peer on-peer and teacher-on-student race-based harassment to determine if it created a hostile environment for the students who were the subjects of those reports.

80. Defendants' failed to offer any supports or remedies to students who were harassed.

81. Defendants' continued to repeatedly respond ineffectively, or not at all, allowing it to continue on a consistent basis and to create a school-level hostile environment.

82. Defendants' failed to investigate the known hostile environment at the School to identify other students who may have been subjected to harassment and a hostile environment, but did not report such harassment to the School given its repeated failures to respond promptly and effectively to reported harassment.

83. Defendants' failed to adequately discipline, supervise, or take minimally sufficient remedial steps after receiving actual knowledge of the racially hostile educational environment faced by MGJ and other Minority students in its school.

84. Defendant Flood was adamant about sending MGJ to R.I.S.E., an alternative school, despite her having no previous history of disciplinary issues, no other infractions, and had an excellent student record since starting preschool in the District, years prior.

85. Between September 7, 2022 through September 15, 2022 there was email correspondence between school administrators and Mrs. Gatlin regarding questions and concerns about the school's decision for the expulsion recommendation, follow-ups, etc.

86. Mrs. Gatlin presented supporting documentation of calls, emails, letters to board members and school officials from other parents, community members, and educators

supporting MGJ and questioning the administration's disposition of the incident that many disagreed with.

87. There has been no contact between Mr. and Mrs. Gatlin and Defendant Flood between September 7, 2022 until the present date.

88. On September 15, 2022, Superintendent Joseph Matise called Mrs. Gatlin, stating the school agreed to withdrawal the expulsion and allow for remote learning only through the remainder of the school year.

89. This was likely due to the high volume of calls, emails, and letters that were received, disagreeing with the Board's decision.

90. Superintendent Joseph Matise stated that MGJ would still not be allowed to attend school in person, she was not allowed on school grounds, and she could not continue with band or any other classes that required in person attendance.

91. MGJ was still excluded from the learning environment.

92. The State of Illinois requires that students receive at least five (5) hours of remote learning each day, but MGJ only received one (1) hour during the 2022-2023 school year, most days.

93. On some occasions, teachers failed to show up for MGJ's remote learning and on those days, she received zero (0) hours of instruction.

94. It was later discovered that MGJ received academic zoom lessons from Mr. Boril, a teacher who was no longer employed by Simmons.

95. Mr. Boril was terminated due to his role in the racial and discriminatory practices against a student named ZS.

96. On November 1, 2022, Mrs. Gatlin informed Derek Simpson of her concern for MGJ's

social and emotional mental state, and no response or follow-up was provided.

97. On January 3, 2023, Attorney Jackie Ross requested documentation from the initial investigative report that should have been conducted back in September of 2022.

98. On January 13, 2023 the attorneys had an online zoom conference to discuss the parent's request.

99. The District's counsel followed up on January 18, 2023, stating that she knew the Gatlin-James family wanted reports and she had reviewed what the District had but was concerned with student confidentiality.

100. The attorneys agreed the District would redact the report and meet with Ms. Gatlin to discuss it.

101. On January 30, 2023, the school still had not provided the requested report and Attorney Ross followed up again.

102. On January 30, 2023, Ms. Ross informed the District's attorneys that she was also now representing ZS Smoot and was requesting a formal bullying investigation into several students and teachers, alleging race-based harassment and bullying.

103. In a separate email, Ms. Ross inquired as to the status of Ms. Gatlin's request for a report and meeting for her daughter, MGJ.

104. The District's attorney responded on January 31, 2023 stating that the new allegations regarding ZS made her wonder if a new investigation was needed.

105. Ms. Ross responded that the District's continued delays in providing Ms. Gatlin a report verified that the District had not taken her allegations of race-based bullying seriously when she first made them in September 2022.

106. On February 7, 2023, the District finally followed up with a formal written report

of their investigation into the Gatlins' race-based bullying and harassment allegations.

107.    On February 7, 2023 a third and final meeting was held with Derek Simpson, Superintendent Matise, School's Attorney Dana, Mrs. Gatlin, Mrs. Gatlin's husband, and Attorney Ross.

108.    The purpose of this meeting was to finally discuss the investigative report provided by the District and other remediation terms discussed including updating District's policies/procedures, sensitivity training, inclusion training, to name a few.

109.    That it took the District over a month to produce a formal written report confirmed for Ms. Gatlin that the school had only produced one in response to her January 3rd request; clearly, the District had not documented its September 2022 investigation following the family's request for a bullying investigation.

110.    The Report contained several material misrepresentations of fact.

111.    In the report, Mrs. Banas' claimed her daughter AB had been having issues with these "girls" for the past year, which is false.

112.    AB used racial slurs/language against TS which was reported and nothing was done to address it.

113.    There was never a laptop strap placed anywhere onto AB's body.

114.    What is depicted in the video is her tangling herself in the strap as the altercation took place.

115.    This was even confirmed by (OLPD) Detective Wiora who reviewed the tape.

116.    AB also admitted that another student, not THJ or MGJ kicked her when she was on the ground.

117.    The tape depicts AB being hit by other students, but the school never addressed

this.

118.    Mrs. Gatlin was told by Derek Simpson that one of the "factors" taken into account leading to their recommendation for expulsion was that it was "planned" and "recorded by students."

119.    This is false as THJ and MGJ were never friends, did not have each other's phone number, did not converse on social media at all prior to the incident, and MGJ did not even have Snapchat or Instagram.

120.    They only became connected when THJ shared her experience regarding AB from the prior year.

121.    Simmons withdrew their expulsion recommendation for MGJ, but it was already part of the Oak Lawn Police Department's (OLPD) file.

122.    AB's parents demanded that MGJ be arrested and wanted the State to pick up the charges.

123.    Robert Banas, the father of AB is or was a law enforcement officer with the Village of Oak Lawn at the OLPD.

124.    MGJ was in fact arrested and the OLPD file was sent to the Juvenile Court.

125.    MGJ records have since been expunged.

126.    The District did not mention anything about MGJ returning to school.

127.    On March 6, 2023, Attorney Ross filed a Complaint against the District with the Office of Civil Rights (OCR) of the U.S. Board of Education, Docket Number, #05-23-1344, which is still under investigation and pending.

128.    On April 4, 2023, only after the OCR Complaint was filed, did Mrs. Gatlin receive an email from Superintendent Matise to discuss the potential return to school

for MGJ

129. This was also due to the court's decision to overturn the expulsion for THJ another student who was involved in the altercation.

130. Mrs. Gatlin declined the District's insulting offer for MGJ to return to in-person learning with only one (1) month remaining in the school year.

131. On Mar 3, 2023, Mrs. Gatlin received a Notice that Defendant Flood and the School Dean Mr. Summers would not be returning to Simmons Middle School for the 2023-2024 school year.

132. Defendant Flood is still employed by the District but was promoted to Director of Teaching and Learning.

133. Between September 11, 2022 and March 28, 2023, Mrs. Gatlin reached out to Oak Lawn Police Department several times to request a copy of the police report filed by Robert and Karen Banas, the parents of AB.

134. The request was continuously denied until Attorney Ross got involved and finally was able to obtain a copy of the police report.

135. Mrs. Gatlin was in contact with Derek Simpson on a consistent basis to discuss concerns and educational arrangements of MGJ throughout the school year and there was never a mention of MGJ returning to school.

136. To add insult to injury to a child, at MGJ's graduation ceremony, her name was not called to receive the Presidential Award for academic excellence, a prestigious award given to a select few, even though she was qualified

137. MGJ received the award during a separate ceremony for the 8th grade students at Simmons.

138.     Allison Fortier sent Ms. Gatlin an e-mail stating,

"I wanted to take a moment and profusely apologize for not saying MGJ's name for the Presidential Award at graduation. When this mistake was brought to my attention, I immediately felt that I let you down and feel so sorry. MGJ, I feel that we have come to know each other fairly well during our morning sessions. I hope that we established a bond where you believe that you can turn to me if you needed something. Even right before graduation, I was excited to see you, helped you find your row, looked at your sparkly new shoes, and took a picture with you. And then here I go at the ceremony my not saying your name. Again, I am very sorry for my mistake. You clearly worked very hard in 6th and 7th grade and then this year I was introduced to your academic ability and you deserve every right to be honored with this award. I do not know how I missed your name, and will not offer random excuses, but am disheartened my error. I hope the attached video may help bring a small ray of sunshine to you. My sincerest apologies.

139.     The Defendants did this because they did not want AB's parents to know MGJ was still part of Simmons.

140.     While Ms. Gatlin appreciates that the District is making an effort to respond to their complaints, she feels strongly that it is too little too late. The District and School staff had turned a blind eye and a deaf ear to the racism that was on display at Simmons Middle School since the 2021-2022 school year. Its failure to act left Black students feeling unsupported and without options. This led THJ and MGJ to take matters into their own hands. As a result, the two girls faced expulsion and now receive limited educational services without access to peers or the fun, normative experiences of attending a public school.

141.     The Superintendent emailed Mrs. Gatlin a copy of the drafted proposed changes to their Policy Handbook.

142.     On July 18, 2023, Superintendent Matise notified Mrs. Gatlin that they would have restorative practice training after the end of the 2022-2023 school year.

16

143.    The 8th grade students who need to receive this training are no longer at Simmons Middle School and are now 9th grade students, attending high school.

**COUNT I: Title VI Of The Civil Rights Act Of 1964**
**42 U.S.C. § 2000d**
**(Ridgeland School District 122 and Board of Education for Ridgeland School District 122)**

144.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

145.    Title VI provides, in relevant part, that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

146.    At all relevant times, Defendants Ridgeland School District 122 (RSD) and the Board of Education received federal financial assistance.

147.    AB and other Caucasian students subjected MGJ and other Minority students to abuse and harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the School District.

148.    Defendant RSD and its officials had actual knowledge of the racist harassment and that it posed a substantial risk to MGJ and other Minority students.

149.    Defendant RSD and its officials possessed the authority to take appropriate remedial action to prevent, deter, mitigate, and/or eradicate the racist harassment to MGJ and other Minority students.

150.    By failing to take immediate, effective remedial steps to resolve the racial discrimination and harassment by fellow students and teachers, Defendant RSD

exhibited deliberate indifference to the racist abuse and harassment of MGJ and other Minority students.

151.    Defendants failure to promptly and appropriately respond to the racist bullying, intimidating, harassment and abuse resulted in MGJ on the basis of her race, being excluded from participation in RSD's education program at Simmon's, in violation of Title VI.

152.    As a direct and proximate result of Defendants' conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and/or psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendants, and award MGJ all relief as allowed by law, including but not limited to the following:

A.  An injunction ordering Defendants to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B.  Actual economic damages as established at trial;

C.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D.  Punitive damages for all claims as allowed by law for all such claims where applicable;

E. Prejudgment and post-judgment interest at the highest lawful rate;

F. Appropriate tax off-set;

G. Attorneys' fees and costs; and

H. Such further relief as justice requires.

## COUNT II: Violation Of Equal Protection Clause Of The Fourteenth Amendment
## 42 U.S.C. § 1983
### (Defendant Tracy Flood)

153.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

154.    Plaintiff MGJ's, equal protection claims are brought under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983.

155.    Section 1983 is presumptively available to remedy a state's ongoing violation of federal law. 42 USC 1983.

156.    Persons acting under the color of law are subject to suit under Section 1983.

157.    Defendant acting under the color of state law, intentionally discriminated against MGJ as a member of an identifiable class, a black female student, by knowingly failing to address the widespread and pervasive racial bullying, intimidation, discrimination, harassment, and abuse against MGJ and other Minority students, by AB and other Caucasian students, despite numerous reports.

158.    Defendant was responsible for student supervision.

159.    Defendant inadequately communicated the anti-harassment and bullying policies to students despite her awareness of racial bullying, intimidation, discrimination, harassment, and abuse on campus, including bullying and harassment by AB and other Caucasian students.

19

160.    Defendant had actual notice of the troubling events involving racial bullying, intimidation, discrimination, harassment, and abuse, yet did nothing to even attempt to fix the problem, making MGJ a victim of racial bullying, intimidation, discrimination, harassment, and abuse.

161.    Defendant had control over AB the harasser, and the campus of Simmons Middle School.

162.    Defendant had authority to take corrective action to end the racial bullying, intimidation, discrimination, harassment, and abuse, but failed to do so and ignored the many instances of student-on-student harassment at Simmons Middle School, despite widespread knowledge that these events were commonplace.

163.    Defendant should have pursued reasonable methods of training, monitoring, supervising, and disciplining students.

164.    She had a duty of care toward MGJ and all other students to prevent the known and rampant racial bullying, intimidation, discrimination, and harassment occurring on and off the premises of Simmons Middle School.

165.    Defendant failed to take action to prevent further racial bullying, intimidation, discrimination, harassment, and abuse, allowing, and facilitating its proliferation.

166.    Defendant failed in her responsibilities to provide an environment free from discrimination and harassment to MGJ who suffered severe psychological trauma as a result of said failure.

167.    Defendant Flood violated MGJ's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving MGJ of equal protection under the law on the basis on race.

20

168.    MGJ was not given proper instruction while participating in Remote learning as some teachers appeared in line late or not at all.

169.    MGJ was given a more severe punishment considering the totality of the circumstances.

170.    Defendant's actions were deliberately indifferent to the constitutional rights of her students, including MGJ, by failing to properly train, monitor, supervise, and discipline students with respect to racial bullying, intimidation, discrimination, harassment, and abuse or to investigate and respond to such allegations.

171.    The aforementioned conduct of the Defendant was done maliciously, oppressively and with an intent to injure MGJ and/or in conscious disregard for her rights and safety.

172.    Defendant's conduct was objectively unreasonable, willful, and wanton, outrageous, and shocking to the conscious.

173.    MGJ suffered such severe, pervasive, and objectively offensive harassment that it has deprived her of access to the educational opportunities or benefits provided by the school.

174.    Defendant is liable for discriminating against MGJ on the basis of race.

175.    The conduct of Defendants violated MGJ's clearly established interests to enjoy equal protection of the law.

176.    Defendant Flood's conduct violated clearly established rights belonging to Plaintiffs of which reasonable public-school officials in his position knew or should have known. As such, she is not entitled to qualified immunity.

177.    As a direct and proximate result of Defendant Flood's conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and

economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendant, TRACY FLOOD, and award MGJ all relief as allowed by law, including but not limited to the following:

A. An injunction ordering Defendant to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B. Actual economic damages as established at trial;

C. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D. Punitive damages for all claims as allowed by law for all such claims where applicable;

E. Prejudgment and post-judgment interest at the highest lawful rate;

F. Appropriate tax off-set;

G. Attorneys' fees and costs; and

H. Such further relief as justice requires.

### COUNT III: Violation Of Equal Protection Clause Of The Fourteenth Amendment
### Monell Violation, 42 U.S.C. § 1983
### (Ridgeland School District 122 and Board of Education for Ridgeland School District 122)

178.    Defendants are liable for constitutional violations by discriminating against MGJ on the basis of race.

179.     Defendants failed in their responsibilities to provide an environment free from discrimination and harassment to MGJ who suffered severe psychological trauma as a result of said failure.

180.     To hold a government entity responsible under Section 1983, Plaintiffs may establish a constitutional violation of their equal protection rights by showing the implementation or execution of a policy, regulation, or decision adopted and promulgated by the body's officers causing their injury. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978).

181.     Monell established limited circumstances when a municipality can be held liable under Section 1983. *Monell v. Dep't of Soc. Serv*., 436 U.S. 658, 694 (1978).

182.     Plaintiffs are challenging conduct that is properly attributable to the municipality itself.

183.     Defendants are liable to the Plaintiffs because they had (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*; see also *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010).

184.     Defendants acted under the color of state law in their capacity.

185.     At all relevant times, Defendants RSD and the Board of Education promulgated and implemented policies, failed to train, discipline students and teachers, and/or acted with deliberate indifference to the rights of MGJ, despite constructive and actual knowledge of the racially hostile educational environment flourishing in their schools.

186.     Defendants are liable to the Plaintiffs because they (1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018).

187.     At all relevant times, final policymakers for Defendants ratified policies, practices, and procedures that resulted in depriving MGJ and other Minority students of equal protection.

188.     At all relevant times, Defendant Tracy Flood was acting under the color of state law in her capacity as a Ridgeland School District 122 employee.

189.     At all relevant times, Defendant Flood was inadequately trained, failed to train her staff and students, and acted with deliberate indifference to severe and pervasive harassment and abuse against MGJ and other Minority students.

190.     Defendant had actual notice of the troubling events involving racial bullying, intimidation, discrimination, harassment, and abuse, yet did nothing to even attempt to fix the problem, making MGJ a victim of racial bullying, intimidation, discrimination, harassment, and abuse.

191.     Defendant Flood had authority to take corrective action to end the racial bullying, intimidation, discrimination, harassment, and abuse, but failed to do so and ignored the many instances of student-on-student harassment at Simmons Middle School, despite widespread knowledge that these events were commonplace.

192.     However, Defendant Flood failed to take action to prevent further racist harassment and abuse, allowing and facilitating its proliferation.

193.     Defendant Flood's conduct was objectively unreasonable, willful and wanton, outrageous, and shocking to the conscious.

194.     The actions and omissions of Defendant Flood were engaged in pursuant to the customs, policies, and practices of Defendants RSD and the Board of Education.

195.     Defendants RSD and the Board of Education were deliberately indifferent to the constitutional rights of their students, including MGJ by failing to properly train, monitor, supervise, and discipline teachers and students with respect to racist harassment and abuse or to investigate and respond to such allegations.

196.     Defendants RSD and the Board of Education should have pursued reasonable methods of training, monitoring, supervising, and disciplining administrators and students.

197.     Defendants RSD and the Board of Education's failures were a custom, policy, or practice of the bodies and a driving force behind the constitutional violations described herein.

198.     Defendants violated MGJ's constitutional rights as a result of a widespread practice that is so permanent as to constitute a custom or usage with the force of law and by a person with final decision policymaking authority to do so.

199.     The actions of Defendant Flood, as described above, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon MGJ.

200.     The conduct of Defendants violated MGJ's clearly established interests to enjoy equal protection of the law.

201.     Defendant Flood's conduct violated clearly established rights belonging to Plaintiffs of which reasonable public-school officials in his position knew or should have known. As such, she is not entitled to qualified immunity.

202.     As a direct and proximate result of Defendant Flood's conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendants, and award MGJ all relief as allowed by law, including but not limited to the following:

A.  An injunction ordering Defendants to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B.  Actual economic damages as established at trial;

C.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D.  Punitive damages for all claims as allowed by law for all such claims where applicable;

E.  Prejudgment and post-judgment interest at the highest lawful rate;

F.  Appropriate tax off-set;

G.  Attorneys' fees and costs; and

H.  Such further relief as justice requires.

## COUNT IV: Action For Neglect To Prevent
## 42 U.S.C. § 1986
## (Defendant Tracy Flood )

203.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

204.     The laws of the United States make it unlawful for two or more persons to conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or deprive them of having and exercising any right or privilege of a citizen of the United States. *See* 42 U.S.C. § 1985(3).

205.     Commonly referred to as the Ku Klux Klan Act (Enforcement Act of 1871).

206.     42 U.S.C. § 1985 is a further vehicle by which victims of racial bullying, intimidating, harassment,  and discrimination enforce their rights to enjoy the same rights as White citizens. *See* 42 U.S.C. § 1981.

207.     The laws of the United States further state that "[e]very person, who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured…for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented…" 42 U.S.C. § 1986.

208.     Plaintiffs have alleged a conspiracy to deprive MGJ of her rights within the meaning of 41 U.S.C. § 1985.

209.     AB and other Caucasian students sought to deprive MGJ and other Minority

students and succeeded in so doing, of equal educational opportunities because of race.

210.     Defendant encouraged such deprivation by means of her statements, acts, and omissions.

211.     Defendant had the power to prevent, or aid in preventing, the commission of past and ongoing unlawful acts, but neglected to make such efforts.

212.     As such, Defendant is liable for the damages caused by her neglect to MGJ

213.     As a direct and proximate result of Defendant Flood's conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendant, TRACY FLOOD, and award MGJ all relief as allowed by law, including but not limited to the following:

A.  An injunction ordering Defendant to cease and desist from engaging in unlawful practices that deprived MGJ and other students of color from accessing equal educational opportunities;

B.  Actual economic damages as established at trial;

C.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D.  Punitive damages for all claims as allowed by law for all such claims where applicable;

28

E.  Prejudgment and post-judgment interest at the highest lawful rate;

F.  Appropriate tax off-set;

G.  Attorneys' fees and costs; and

H.  Such further relief as justice requires.

## COUNT V – Negligence
### (Ridgeland School District 122 and Board of Education for Ridgeland School District 122)

214.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

215.    Under the Tort Claims Act, Defendants are vicariously liable for injuries proximately caused by negligence of school personnel responsible for student supervision, namely Defendant Tracy Flood.

216.    The BOE had a duty to supervise students on the premises of Simmons Middle School.

217.    Standard of care imposed upon school personnel in carrying out duty to supervise students is identical to that required in the performance of their other duties, i.e., that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances.

218.    Either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision.

219.    Defendants are responsible for faculty and student supervision.

220.    They had a duty of care toward MGJ and other Minority students to prevent the known and rampant racial bullying, intimidation, discrimination, harassment, and abuse occurring on and off the premises of Simmons Middle School.

221.    Tracy Flood and Derek Simpson breached their duty by failing to supervise the

29

conduct of students, giving rise to vicarious liability by BOE.

222.     The breach of duty by Tracy Flood and Derek Simpson and the BOE to supervise AB and other Caucasian students caused MGJ and other Minority students to suffer serious psychological injury.

223.     As a direct and proximate result of Defendants' conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendants, and award MGJ all relief as allowed by law, including but not limited to the following:

A.  An injunction ordering Defendants to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B.  Actual economic damages as established at trial;

C.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D.  Punitive damages for all claims as allowed by law for all such claims where applicable;

E.  Prejudgment and post-judgment interest at the highest lawful rate;

F.  Appropriate tax off-set;

G. Attorneys' fees and costs; and

H. Such further relief as justice requires.

### COUNT VI: Willful And Wanton Supervision
### (Defendant Tracy Flood)

224. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

225. Defendant was acting within the scope of her employment.

226. Defendant had a duty to exercise reasonable care in the supervision of students and teachers at Simmons.

227. Defendant had a duty to supervise and protect the safety of students, including MGJ and other Minority students.

228. Defendant had a duty to prevent attacks against MGJ and other Minority students, including before, during, and after school.

229. Defendant failed to notify authorities, including the Oak Lawn Police Department, of AB and other Caucasian students' repeated racial bullying, intimidation, harassment, and discrimination against MGJ and other Minority students at Simmons Middle School.

230. Defendant turned a blind eye to the racial bullying, intimidating, harassment, and discrimination attacks against MGJ and other Minority students because AB's father Robert Banas and/or other family members are or were police officers at the Oak Lawn Police Department.

231. Defendant had a duty to exercise, prevent, protect and/or intervene when she knew of the risk of harm associated with bullying.

232. Defendant knew, or should have known, that MGJ and other Minority students were repeated targets of racial bullying, intimidation, discrimination, harassment, and abuse,

31

on and off campus.

233.    Defendant knew, or should have known, that AB and other Caucasian students used social media and in school tactics to bully, intimidate, discriminate against, harass, and abuse MGJ and other Minority students.

234.    Defendant knew, or should have known, that she fostered and participated in a pattern and practice of allowing racial bullying, intimidation, discrimination, harassment, and abuse against MGJ and other Minority students.

235.    Defendant knew or should have known that AB and other Caucasian students should have been properly supervised during the school day.

236.    Defendant had a duty to follow the protocol in responding, investigating, disciplining, preventing, and reporting to the District and BOE, as well as to parents all bullying incidents so as to protect, prevent and deter future incidences and to prevent harm to its students, like MGJ and other Minority students.

237.    In violation of its duties as aforesaid, Defendant committed one or more of the following acts or omissions as alleged above and shown by the evidence at trial:

   a. Allowed AB and other Caucasian students to harass, intimidate, bully, and discriminate against MGJ and other Minority students;

   b. Willfully and wantonly failed to prevent and supervise AB and other Caucasian students from harming MGJ and other Minority students;

   c. Recklessly disregarded the continuous and ongoing risk of harm that AB and other Caucasian students posed to MGJ and other Minority students' well-being and safety;

   d. Willfully and wantonly failed to protect MGJ and other Minority students from the

reasonably foreseeable threat posed by AB and other Caucasian students;

e. Willfully and wantonly failed to protect MGJ and other Minority students from being bullied, intimidated, discriminated against, harassed, and abused by students like AB and other Caucasian students;

f. Willfully and wantonly failed to supervise AB and other Caucasian students' actions before, during, and after school hours;

g. Willfully and wantonly violated 105 ILCS 5/10-20.14 of the Illinois School Code "Student Discipline Policies";

h. Willfully and wantonly violated 105 ILCS 5/27-23.7 of the Illinois School Code "Bullying Prevention"; and

i. Willfully and wantonly violated the Simmons Middle School's Code of Conduct.

238.    As a direct and proximate result of Defendant Flood's conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendant, TRACY FLOOD, and award MGJ all relief as allowed by law, including but not limited to the following:

A. An injunction ordering Defendant to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational

opportunities;

B.  Actual economic damages as established at trial;

C.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D.  Punitive damages for all claims as allowed by law for all such claims where applicable;

E.  Prejudgment and post-judgment interest at the highest lawful rate;

F.  Appropriate tax off-set;

G.  Attorneys' fees and costs; and

H.  Such further relief as justice requires.

**COUNT VII: Willful And Wanton Supervision**
**(Ridgeland School District 122 and Board of Education for Ridgeland School District 122)**

239.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

240.    Defendants through its agents and/or employees, failed to notify authorities of Simmons' Middle School Students' repeated racial bullying, intimidating, harassment, and discrimination attacks against MGJ and other Minority students at Simmons Middle School.

241.    Defendants turned a blind eye to the racial bullying, intimidating, harassment, and discrimination attacks against MGJ because AB's father Robert Banas and/or other family members are or were police officer(s) at the Oak Lawn Police Department.

242.    Defendants had a duty to exercise reasonable care in the supervision of its agents and/or employees, including Defendant Tracy Flood and Derek Simpson.

243.    Defendants by and through its agents and/or employees, had a duty to supervise AB

34

and other Caucasian students and protect the physical safety of students, including MGJ and other Minority students.

244.    Defendants by and/or through its agents and/or employees had a duty to prevent and/or intervene when it learned that students were carrying out attacks on MGJ and other Minority students which clearly jeopardized the safety and well-being of her and Minority students.

245.    Defendant Tracy Flood and Derek Simpson had a duty to exercise reasonable care the supervision of those on its premises.

246.    Defendants had a duty to exercise, prevent, protect and/or intervene when they knew of the risk of harm associated with bullying.

247.    Defendants knew, or should have known, that MGJ and other Minority students were repeated targets of racial bullying, intimidation, discrimination, harassment, and abuse, on and off campus and that AB and other Caucasian students used social media and in school tactics to do so.

248.    Defendants knew, or should have known, that Tracy Flood and Derek Simpson fostered and participated in a pattern and practice of racial bullying, intimidation, discrimination, harassment, and abuse against MGJ and other Minority students by failure to act.

249.    Defendants knew, or should have known, that Tracy Flood and Derek Simpson covered up and/or omitted material facts detailing the wrongdoing by AB and other Caucasian students.

250.    Defendants had a duty to supervise its employees to ensure that they followed and complied with the policies and procedures set forth in the Illinois School Code.

251.     Defendants had a duty to supervise its employees, including but not limited to Tracy Flood and Derek Simpson, to ensure that they followed and complied with all BOE policies and procedures.

252.     The BOE, through its employees and agents, had a duty to follow the protocol in responding, investigating, disciplining, preventing, and reporting to the BOE, as well as to parents all bullying incidents so as to protect, prevent and deter future incidences and to prevent harm to its students, like MGJ and other Minority students.

253.     In violation of its duties as aforesaid, the BOE committed one or more of the following acts or omissions as alleged above and shown by the evidence at trial:

   a.   Willfully and wantonly failed to prevent and supervise AB other Caucasian students, Tracy Flood, and Derek Simpson from harming MGJ and other Minority students;

   b.   Recklessly disregarded the continuous and ongoing risk of harm that AB and other Caucasian students posed to MGJ and other Minority students' well-being and safety;

   c.   Willfully and wantonly failed to protect MGJ and other Black students from the reasonably foreseeable threat posed by AB and other Caucasian students;

   d.   Willfully and wantonly failed to protect MGJ and other Black students from being bullied, intimidated, discriminated against, harassed, and abused by students like AB and other Caucasian students;

   e.   Willfully and wantonly violated 105 ILCS 5/10-20.14 of the Illinois School Code "Student Discipline Policies";

   f.   Willfully and wantonly violated 105 ILCS 5/27-23.7 of the Illinois School Code

36

"Bullying Prevention";

g. Willfully and wantonly violated the Simmons Middle School's Code of Conduct; and

h. Willfully and wantonly failed to report the verbal abuse and bullying by AB and other Caucasian students to the Oak Lawn Police Department.

254. As a direct and proximate result of Defendants' conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendants, and award MGJ all relief as allowed by law, including but not limited to the following:

A. An injunction ordering Defendants to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B. Actual economic damages as established at trial;

C. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D. Punitive damages for all claims as allowed by law for all such claims where applicable;

E. Prejudgment and post-judgment interest at the highest lawful rate;

F.  Appropriate tax off-set;

G.  Attorneys' fees and costs; and

H.  Such further relief as justice requires.

## COUNT VIII: Willful And Wanton Hiring And Retention
### (Ridgeland School District 122 and Board Of Education For Ridgeland School District 122)

255.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated

herein.

256.     Defendants knew or reasonably should have known that Defendant Flood permitted

AB and other Caucasian students an engaged in a pattern and practice of bullying MGJ

and other Minority students, which included verbal abuse and harassment, both

personally and indirectly by encouraging bullying behaviors.

257.     Defendants knew or reasonably should have known that Defendant Flood did not

modify her conduct or position with regard to bullying.

258.     Defendants had the authority to hire, fire, and discipline, teachers, and staff working

at Simmons, including Defendant Flood, to ensure that the school provided a safe

environment for the wellbeing of its students.

259.     Defendants had a duty to exercise reasonable care for the safety of others, including

MGJ and other Minority students.

260.     Defendants had a duty not to create an unreasonable risk of harm to students at

Simmons Middle School, including but not limited to the risk of racial bullying,

intimidation, discrimination, harassment, and abuse.

261.     Defendants had a duty to comply with the Illinois School Code.

262.     Defendants had a duty to comply with the BOE Manual.

263.    In violation of its duties as aforesaid, the BOE committed one or more of the

following acts of omissions:

    (a)    Willfully and wantonly failed to protect children, like MGJ and other Minority students from the reasonably foreseeable threat posed by Defendant Flood, AB and other Caucasian students;

    (b)    Willfully and wantonly failed to protect children, like MGJ and other Minority students, from bullying behavior, including oral harassment;

    (c)    Willfully and wantonly ignored AB and other Caucasian students' repeated harassment of MGJ and other Minority students;

    (d)    Willfully and wantonly ignored AB and other Caucasian students who bullied, harassed, and abused MGJ and other Minority students;

    (e)    Willfully and wantonly disregarded the Illinois "Qualifications of Educators" and School "Code of Ethics" set forth in 105 ILCS 5/21;

    (f)    Willfully and wantonly disregarded its obligations under 105 ILCS 5/24 by failing to implement a plan incorporating remedial measure to stop bullying by AB and other Caucasian students they knew or should have known that such a plan was needed;

    (g)    Willfully and wantonly failed to remove Defendant Flood, AB and other Caucasian students from the premises of the Simmons Middle School;

    (h)    Willfully and wantonly failed to enforce and/or establish a monitoring and/or an assessment system for Defendant Flood, AB and other Caucasian students in violation of 105 ILCS 5/24;

    (i)    Willfully and wantonly disregarded the qualifications and requirements established by BOE for teachers, paraprofessionals, and assistants; and

    (j)    Willfully and wantonly ignored Defendant Flood, AB and other Caucasian students repeated violations of the code of conduct.

264.    As a direct and proximate result of Defendants' conduct as aforesaid, MGJ

sustained and continues to sustain severe, permanent physical, mental, emotional, and

economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of

reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and

will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE,** Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ respectfully request that this Court enter judgment in their favor, against Defendants, and award MGJ all relief as allowed by law, including but not limited to the following:

A. An injunction ordering Defendants to cease and desist from engaging in unlawful practices that deprive MGJ and other students of color from accessing equal educational opportunities;

B. Actual economic damages as established at trial;

C. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D. Punitive damages for all claims as allowed by law for all such claims where applicable;

E. Prejudgment and post-judgment interest at the highest lawful rate;

F. Appropriate tax off-set;

G. Attorneys' fees and costs; and

H. Such further relief as justice requires.

### COUNT IX: Intentional Infliction Of Emotional Distress
### State Law Claim
### (Plaintiff Against Defendant Tracy Flood)

265. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully stated herein.

266. The acts and conduct of the Defendant Tracy Flood set forth above were extreme and outrageous.

267.     Defendant's actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that her conduct would cause, severe emotional distress to MGJ as is more fully alleged above

268.     Plaintiff MGJ suffered and continues to suffer emotional distress.

269.     As a direct and proximate result of Defendants' conduct as aforesaid, MGJ sustained and continues to sustain severe, permanent physical, mental, emotional, and economic injuries, alienation, humiliation, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life. MGJ has incurred, and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiffs, SIMONE GATLIN, on behalf of MGJ a minor child, and MGJ demands judgment against Defendant TRACY FLOOD for:

A.  Compensatory damages against each Defendant in an amount to be proven at trial;

B.  Punitive and exemplary damages against Defendant Tracy Flood in an amount appropriate to punish her and deter others from engaging in similar misconduct;

C.  Costs of suit;

D.  Reasonable attorney's fees pursuant statute and as otherwise authorized by statute or law;

E.  Pre- and post-judgment interest as permitted by law; and

F.  Such other relief, including injunctive and/or declaratory relief, as the court may deem fair, just, and equitable.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

41

Dated: September 7, 2023

Respectfully submitted,
PINKSTON LAW GROUP, PC

/s/ Danielle A. Pinkston

_____

Danielle A. Pinkston
54 North Ottawa Street, Suite #110
Joliet, Illinois 60432
Office: (773) 770-4771
Fax: (773) 770-4772
dpinkston@pinkstonlawgroup.com
Atty. for: Plaintiffs